## HENRY D. BOONE *v.* THE STATE.

CRIMINAL LAW. *Convicts. Corporal punishment* Convicts in the penitentiary, cannot be punished except as authorized by statute, except by authority of the Board of Inspectors of the prison. The warden of the penitentiary has no power to inflict corporal punishment, except the Board, in its discretion, authorize such punishment in each particular case. The Board has no authority to delegate this discretion to inflict such punishment to the warden.

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county.   L. B. HORRIGAN, J.

LUKE E. WRIGHT for Boone.

ATTORNEY-GENERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The defendant has been convicted in two cases of assault and battery.   The questions in each case are the same, arising upon an agreed state of facts.   The defendant was assistant warden of the State penitentiary and in · charge of a branch prison in Shelby county, established by the lessees under the act of the Legislature of the 26th of March, 1877.   The prisoners assaulted were convicts in said prison, and one of them "refused to obey the lawful orders given him to work, and became mutinous and refused to work or labor as he was required to do," and as a pun-

Boone v. State.

ishment, the defendant struck said convict ten "licks" with a whip or leather strap.

The other convict attempted to escape from custody and was in the act of running away, and for this was punished by the defendant with fifteen "licks" with the whip or strap. It is agreed that the punishment in each case was moderate, and, if lawful at all, was not unreasonable or excessive. The question is whether the defendant was, by law, authorized to inflict punishment of this character to any extent.

It is argued that the authority must exist to enforce the judgment of the law sentencing the convicts to hard labor in the penitentiary; otherwise, by refusing to obey the orders to work, and submit to prison regulations and discipline, he might practically defy the law. It is further argued that such means of enforcing obedience upon the part of the convict, may be resorted to as has been recognized by the common law—and that the common law has recognized corporal punishment as one of its means. It is unnecessary to enter into a discussion of the common law authority upon the subject, as we think the matter is regulated by our own statutes.

Under the head of "Police Regulations of the Penitentiary," section 5518 of the Code, provides that: "If any convict neglects or refuses to perform the labor assigned him, or wilfully injures any of the materials, implements, or tools, or engages in conversation with any of the convicts, or in any other manner violates any of the regulations of the penitentiary, he may be punishined by solitary confinement for a period

not exceeding thirty days for each offence, at the dis-cretion of the keeper or other person acting in his place."

The next section provides that the solitary confine-ment shall be upon bread and water, under the phy-sician's certificate that the health of the convict requires other diet. Subsequent sections 5521 and 5522, pro-vides that a record be kept of such cases, and if approved by the inspectors that five days be added to the original term of imprisonment for each day of solitary confinement the convict has undergone, unless this penalty be remitted by the Governor. Section 5520 provides that "no convict shall be punished in any other way than is herein provided, except by the authority of the board of inspectors." That is to say, no other punishment is to be inflicted than as pro-vided by the sections above referred to, "except by the authority of the board of inspectors." And to make the matter more explicit, section 5531 enacts that "any officer who shall corporally punish any convict without the prescribed authority from the inspectors, shall be by them dismissed from office."

We have examined the act of the 26th of March, 1877, under which the lease of the penitentiary and the convict labor was consummated, and find nothing in it repealing or modifying the above sections of the Code. The act *does* authorize the establishment of branch prisons and the employment of convicts at places other than the State penitentiary, and as the board of in-spectors is, by the act, constitued of the Secretary of State, Comptroller and Treasurer, it may reasonably be

supposed that they are not expected to attend the branch prisons and supervise the discipline of the convicts therein; still, there is nothing in the act increasing the powers of the warden or other officers, in regard to the punishment of the prisoners, in fact, the act seems to jealously guard against the danger of the convicts being subject to cruel and inhumane treatment.

It follows, therefore, that no convict can be punished otherwise than as provided by sections 5518, 5519, 5521 and 5522 of the Code, except by authority of the board of inspectors. The agreed state of facts shows that "it is agreed that the board of inspectors appointed by said act, * * adopted the following rules and regulations for the government of the convicts which are marked Exhibit A," but the memorandum of the clerk shows "that the rules mentioned were not on file, and had never been." The agreement continues, however, that it is conceded by the attorney-general, that if the board of inspectors had the right to adopt such rules, the defendant should be acquitted. The regulations not being before us, we cannot know their import. We may, however, for the argument, concede that they profess to authorize the warden, or deputy warden, to inflict corporal punishment in the manner and to the extent indicated in this case, whenever in his opinion the convicts have been guilty of the offenses shown by the agreement in this case.

We hold that the board of inspectors cannot delegate such power to the warden, or deputy warden. If other punishment is to be inflicted than that pre-

scribed by the Code, it is to be by authority of the board of inspectors, that is to say, the board must award the punishment in each particular case. They cannot prescribe general rules and regulations and empower the warden or keeper to determine when, in his opinion, these rules have been violated, and when, in his judgment and discretion, the additional punishment should be repeated, and to what extent. The powers and duties of the board, in this respect, cannot be delegated.

The offense for which one of the convicts in this case was punished, is specially enumerated in section 5518 of the Code, and the punishment pointed out in the next section, that is to say, all the punishment that can be inflicted by the warden and keeper without the authority of the board of inspectors. It would be inconsistent to say that the board of inspectors may enact rules by which the warden can inflict punishment directly forbidden by the sections referred to. If the warden was to be vested with such powers, it would have been directly conferred by the Legislature.

The offense for which the other criminals was punished, is specially provided for in section 5533 of the Code, and the mode of punishment pointed out, that is to say, by indictments for an escape, and hence, it cannot be held that the warden may, for this offense, summarily punish by stripes.

The judgment must be affirmed.